IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

No. 21-2275

Criminal

---

UNITED STATES OF AMERICA,

Appellee,

v.

JOHNTEZ LEONDIS RANDLE,

Appellant.

---

Appeal from the United States District Court for the
District of Minnesota

---

APPELLANT'S BRIEF

---

THOMAS H. SHIAH
Minnesota Attorney #100365
331 Second Ave South #705
Minneapolis, MN 55401
(612) 338-0066

STEVEN J. WRIGHT
Minnesota Attorney #387336
331 Second Ave South #705
Minneapolis, MN 55415
(612) 669-8280

Attorneys for Appellant

## SUMMARY OF THE CASE AND
## REQUEST FOR ORAL ARGUMENT

Mr. Randle moved the district court for the suppression of evidence recovered during execution of a search warrant because it failed to establish a nexus between criminal activity and the house that was searched. He also made a related request for hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether that search warrant was obtained through deliberate or reckless misstatements of fact. As part of his *Franks* motion, Mr. Randle also requested additional discovery.

Although the district court agreed that the search warrant failed to establish probable cause to search the house, the search was upheld under the good-faith exception. The district court also denied the motions for *Franks* hearing and related discovery, and Mr. Randle entered into a conditional plea allowing him to appeal these pretrial issues. Mr. Randle now also appeals the substantive reasonableness of the sentence imposed.

Mr. Randle requests 15 minutes of oral argument on this issue.

# TABLE OF CONTENTS

Summary of the Case and Request for Oral Argument . . . . .    i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    iv

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . .    vi

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    vii

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    vii

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . .    12

Argument

I.  The district court erred by ruling that the officer could
    rely in good faith on a warrant clearly lacking
    probable cause to search the Vera Cruz townhouse. . . .    13

    A. Legal standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

    B. A reasonable officer would have known that
       the warrant failed to establish probable cause
       to search the Vera Cruz townhouse. . . . . . . . . . . . . . .    15

II. The district court erred by failing to conduct
    a *Franks* hearing to determine whether the
    affiant officer's misrepresentations and
    omissions were material and made
    deliberately or recklessly. . . . . . . . . . . . . . . . . . . . . . . . . .    22

    A. Legal standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

    B. The district court erred by denying Mr. Randle
       a *Franks* hearing and by denying his motion for
       discovery relevant to the *Franks* inquiry. . . . . . . . . . .    24

C. It was procedural error to permit the government to offer evidence in support of the search warrant without conducting a full *Franks* hearing and granting Mr. Randle's discovery motion. . . . . . . . . .	29

III. The district court erred by imposing a sentence that was substantively unreasonable in light of the compelling mitigating arguments. . . . . . . . . . . .	33

A. Legal standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . .	33

B. The sentence imposed here was substantively unreasonable, resulting in a sentence that was greater than necessary. . . . . . .	34

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .	39

Certificate of Compliance with
Fed.R.App.P. 32(a) and 8th Cir.R.28A(h)

Certificate of Electronic Service

Appellant's Addendum

# TABLE OF AUTHORITIES

Federal Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page(s)

*Florida v. Jardines*, 569 U.S. 1 (2013) . . . . . . . . . . . . . . . . . . . . . . 25

*Franks v. Delaware*, 438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . *passim*

*Gall v. United States*, 552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . 34–35

*Kimbrough v. United States*, 552 U.S. 85 (2007) . . . . . . . . . . . . . 34

*Rita v. United States*, 551 U.S. 338 (2007) . . . . . . . . . . . . . . . . . . 33, 37

*Silverman* v. *United States*, 365 U.S. 505 (1961) . . . . . . . . . . . . . 25

*United States v. Arnold*, 725 F.3d 896 (8th Cir. 2013) . . . . . . . . . 22

*United States v. Calandra*, 414 U.S. 338 (1974) . . . . . . . . . . . . . . 14

*United States v. Carpenter*, 341 F.3d 666 (8th Cir. 2003) . . . . . . . 16, 25

*United States v. Colbert*, 605 F.3d 573 (8th Cir. 2010) . . . . . . . . . 18

*United States v. Cowling*, 648 F.3d 690 (8th Cir. 2011) . . . . . . . . 27

*United States v. Daigle*, 947 F.3d 1076 (8th Cir. 2020) . . . . . . . . . 23

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009) . . . . . . . 33

*United States v. Grant*, 490 F.3d 627 (8th Cir. 2007) . . . . . . . . . . 13, 14, 21

*United States v. Herron*, 215 F.3d 812 (8th Cir. 2000) . . . . . . . . . 18–19

*United States v. Jacobs*, 986 F.2d 1231 (8th Cir. 1993) . . . . . . . . . 22, 23, 26, 28

*United States v. Leon*, 468 U.S. 897 (1984) . . . . . . . . . . . . . . . . . . *passim*

*United States v. Marion*, 238 F.3d 965 (8th Cir. 2001) . . . . . . . . .   17

*United States v. McIntyre*, 646 F.3d 1107 (8th Cir. 2011) . . . . . . .   27

*United States v. McMurtrey*, 704 F.3d 502 (7th Cir. 2013) . . . . . .   29, 30–31

*United States v. Moya*, 690 F.3d 944 (8th Cir. 2012) . . . . . . . . . . .   25

*United States v. Peterson*, 848 F.3d 1153 (8th Cir. 2017) . . . . . . .   33, 37

*United States v. Reivich*, 793 F.2d 957 (8th Cir. 1986) . . . . . . . . .   27

*United States v. Ross*, 487 F.3d 1120 (8th Cir. 2007) . . . . . . . . . .   7, 16, 18

*United States v. Smith*, 715 F.3d 1110 (8th Cir. 2013) . . . . . . . . . .   27

*United States v. Spears*, 673 F.3d 598 (7th Cir. 2012) . . . . . . . . . .   31

*United States v. Spears*, 469 F.3d 1166 (8th Cir. 2006) . . . . . . . . .   35

*United States v. Tellez*, 217 F.3d 547 (8th Cir. 2000) . . . . . . . . . .   13, 16

*United States v. Williams*, 477 F.3d 554 (8th Cir. 2007) . . . . . . .   23, 37

*Zurcher v. Stanford Daily*, 436 U.S. 547 (1978) . . . . . . . . . . . . . .   14

Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   Page(s)
18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   vi

18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 34

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   vi

# JURISDICTIONAL STATEMENT

Jurisdiction in the trial court was proper under 18 U.S.C. § 3231, because Mr. Randle was charged with and convicted of offenses against the United States.

Mr. Randle was sentenced on May 25, 2021. He filed a notice of appeal on June 7, 2021, which was timely under Rule 4(b) of the Federal Rules of Appellate Procedure. This Court has jurisdiction under 28 U.S.C. § 1291 to hear this appeal of a final judgment of the United States District Court.

# STATEMENT OF THE ISSUES

## I.

**THE DISTRICT COURT ERRED BY FAILING TO SUPPRESS THE FRUITS OF A SEARCH WARRANT BASED ON AN AFFIDAVIT NOT SUPPORTED BY ADEQUATE PROBABLE CAUSE.**

*United States v. Carpenter*, 341 F.3d 666 (8th Cir. 2003)
*United States v. Herron*, 215 F.3d 812 (8th Cir. 2000)

## II.

**THE DISTRICT COURT ERRED BY FAILING TO CONDUCT A *FRANKS* HEARING AND TO ORDER THE GOVERNMENT TO DISCLOSE REQUESTED RELEVANT EVIDENCE.**

*United States v. Jacobs*, 986 F.2d 1231 (8th Cir. 1993)
*United States v. McIntyre*, 646 F.3d 1107 (8th Cir. 2011)
*United States v. McMurtrey*, 704 F.3d 502 (7th Cir. 2013)

## III.

**THE DISTRICT COURT ERRED BY IMPOSING A SUBSTANTIVELY UNREASONABLE SENTENCE.**

*Gall v. United States*, 552 U.S. 38 (2007)
*United States v. Peterson*, 848 F.3d 1153 (8th Cir. 2017)

## STATEMENT OF THE CASE

This is an appeal of pretrial suppression and related discovery issues and of sentencing following a conditional guilty plea to one count of possessing 28 or more grams of crack with the intent to distribute.

The prosecution grew out of an investigation into alleged crack distribution in Minneapolis. During that investigation, Minneapolis Police Officer Efrem Hamilton obtained a warrant permitting searches of a house on Vera Cruz Lane in Minneapolis, an Audi vehicle, and Mr. Randle's person. Each warrant was based on the same affidavit from Off. Hamilton. (*See* Application for Search Warrant, Dist.Ct.Doc. 28-1, Addendum at A–14.)

The affidavit claimed that Off. Hamilton had learned that a male was alleged to be selling crack cocaine in Minneapolis, and he had identified that male as Mr. Randle through "various investigative techniques." (*Id*.) Off. Hamilton claimed that Mr. Randle was "on U.S. Probation and on Supervised Release" and had the residence on Vera Cruz "listed as his reported address until 03/08/2021." (*Id*.) Off. Hamilton also mentioned that he had reviewed Minnesota identification and driving records, which showed that Mr. Randle's license was cancelled. (*Id*.)

The affidavit claimed that Off. Hamilton had "had many interactions with RANDLE including arrests and undercover crack cocaine buys from RANDLE." (*Id*.) In other words, Off. Hamilton told the magistrate that more than once he had arrested Mr. Randle, and also that more than once he had made undercover buys of crack cocaine from him.

Off. Hamilton claimed that, within the past 72 hours prior to applying for the search warrant, he had sent a CRI to "an area of Minneapolis" to buy crack cocaine from Mr. Randle. (*Id*.) The CRI arranged a meeting and Mr. Randle then arrived in a silver 2008 Audi Q7 "registered to him in the DMV/DVS records." (*Id*.) According to the affidavit, the CRI "made contact with" Mr. Randle and exchanged "pre-recorded buy funds" for "a quantity of suspected crack cocaine[.]" (*Id*.)

Off. Hamilton then told the magistrate that, immediately after the meeting, Off. Hamilton met with the CRI for a debrief. (*See id*.) The CRI turned over a substance that field-tested as crack cocaine. (*See id*.) Off. Hamilton showed the CRI a photo of Mr. Randle, and the CRI said that it was the person who had sold the cocaine. (*See id*.)

The affidavit further said that "Your Affiant and assisting Officers followed RANDLE as he drove from the City of Minneapolis to his home

located at [****] Vera Cruz Lane, Brooklyn Park, MN." (*Id*.) The affidavit did not explain when this occurred.

Just after the search warrant was executed at the Vera Cruz townhouse, Mr. Randle arrived and arrested outside. Officers searching the townhouse found contained crack cocaine and other related evidence. Mr. Randle was then indicted on one count of possession of crack cocaine with intent to distribute. (*See* Indictment, Dist.Ct.Doc. 1.)

As part of his pretrial motions, Mr. Randle filed a Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure and a Motion for Hearing Pursuant to *Franks v. Delaware*, both challenging the lawfulness of the search warrants. (*See* Dist.Ct.Doc. 21, 22.) He also filed a discovery motion asking for the government to turn over materials that would support the *Franks* inquiry, including documents, reports, and recordings related to the alleged controlled buys referenced in the affidavit. (*See* Defendant's Motion for Supp. Discovery, Dist.Ct.Doc. 39, at 6–7.)

There were several inaccuracies and notable omissions that raised questions about Off. Hamilton's credibility in his affidavit. First, although Off. Hamilton referred to the Vera Cruz address as Mr. Randle's "home," Mr. Randle's state ID and driving record both said he lived on Stevens

Avenue in Minneapolis. (*See* Dist.Ct.Doc. 45–1.) In the affidavit, Off. Hamilton had specifically mentioned reviewing Mr. Randle's driving records, making it likely that he was aware of the different address.

An investigator looked into the records of interactions between Off. Hamilton and Mr. Randle and found only one, a buy and arrest from 2012, and another incident in 2008 where Mr. Randle was neither arrested nor charged. (*See* Def. Memo. in Support of Hearing Pursuant to *Franks v. Delaware*, Dist.Ct.Doc. 23, at 3.)

As part of its response to Mr. Randle's motions, the government filed three exhibits. The first was the search warrant and affidavit, but in response to the *Franks* motion, the government also filed a declaration from Off. Hamilton, the affiant officer, and a supporting Minneapolis Police Department report. (*See* Dist.Ct.Doc. 28-1, 28-2, and 28-3.) The declaration implicitly agreed that it had been inaccurate to use the plural in describing how many buys and arrests there had been, because there had been exactly one buy and arrest in 2012, as Mr. Randle had asserted in his *Franks* memorandum. But the declaration said that Off. Hamilton had conducted another controlled buy with Mr. Randle in October 2018, representing that the reference to multiple buys was accurate. This was supported by a

police report purporting to document that controlled buy, although it contained neither Off. Hamilton's name nor Mr. Randle's, nor any description of the alleged controlled buy. (*See* Minneapolis Police Dept. Report, Dist.Ct.Doc. 28-3.) Mr. Randle submitted affidavits from himself and his employer to prove that he had been at work at the time of the alleged October 2018 controlled buy. (*See* Affidavit of Denise Evans, Affidavit of Johntez Randle in Support of Pretrial Motions, Ex. 1–2 to Third Memorandum in Support of Motion for Hearing Pursuant to *Franks v. Delaware*, Dist.Ct.Doc. 71.)

At a motions hearing, Off. Hamilton testified and was subject to cross-examination. Off. Hamilton admitted that it was not accurate to say that he had arrested Mr. Randle multiple times, as he'd alleged in the affidavit, because it had only happened once. (*See* Oct. 29, 2019 Mtns Hrg T. [Mtns T.] 22, 24–25.)

It was also not accurate to say, as he had alleged in his affidavit, that U.S. Probation had told him that the Vera Cruz was "listed as [Mr. Randle's] reported address until 03/08/2021." (*See id*. at 56–57.) Mr. Randle was on federal probation until March 8, 2021, but Off. Hamilton did not

receive any information about when the address was reported or how long it would be accurate. (*See id*.)

Off. Hamilton also acknowledged that he was aware that Mr. Randle had an address on Stevens Avenue in Minneapolis listed in various state records, but he did not include that information in his affidavit. (*See id*. at 62, 74.) He confirmed that he did not check to see if Mr. Randle was listed as a resident of the Vera Cruz townhome in the lease agreement, which in fact he was not. (*See id*. at 74–76.)

Off. Hamilton testified that, in his experience, people he is investigating are often associated with multiple addresses and might have different uses for each one. (*See id*. at 84.) When asked why he did not include the Stevens Avenue information in his affidavit, Off. Hamilton said, "I don't believe it was relevant. I didn't place him at that address. . . . I had his driver's license identification to that address, but it doesn't necessarily mean that it's correct and accurate." (*Id*. at 83, 84.) But he admitted he only knew of Mr. Randle going to the Vera Cruz townhouse one time:

> THE COURT: So your basis of determining that was the address is because he went there after a controlled buy and was there for 30 minutes?
>
> THE WITNESS: Yes, sir.

(Mtns T. 86.) Off. Hamilton then told the magistrate judge that, based on his observations, he "drew the conclusion that either he's bringing back the proceeds back to that location, that is the location where he lives, or it could be also a location where he lives and also has narcotics." (*Id*.)

The magistrate judge issued a Report and Recommendation recommending that Mr. Randle be granted a *Franks* hearing with discovery related to the omitted address information. (*See* Report and Recommendation [R&R], Dist.Ct.Doc. 103, at 24–25.) The R&R found that the search warrant had failed to establish a nexus between criminal activity and the Vera Cruz townhouse, because it did not establish that Mr. Randle was followed from the controlled buy to the residence and because Off. Hamilton made no claim that his experience would teach that drug paraphernalia would be found at the residence. (*See id*. at 5 (citing *United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007).) Nevertheless, the R&R recommended denying Mr. Randle's suppression motion because the search was saved by the *Leon* exception to the exclusionary rule. (*See id*. at 9–10 (citing *United States v. Leon*, 468 U.S. 897 (1984)).) Because "the officer's

failure to explain that, in his professional judgment, drug distributors often keep narcotics at their homes" was a "technical legal deficiency" where separate connections are established between a person and drug trafficking and between that person and a residence identified as their home. (*Id*. at 9.)

But although the good-faith exception saved the warrant, the R&R recommended that Mr. Randle should be given a *Franks* hearing related to Off. Hamilton's misstatements and omissions in identifying the Vera Cruz townhouse as Mr. Randle's "home." The R&R found that the failure to include conflicting address information was "clearly critical" to the finding of probable cause, given that the warrant application on its face failed to establish a nexus to the Vera Cruz townhouse. (*See id*. at 16, 17.) The R&R recommended granting in part Mr. Randle's discovery motion to require the government to disclose "steps that law enforcement took to confirm [Mr. Randle's] address, as well as identify any officers who conducted surveillance of [Mr. Randle] following the 2019 controlled buy, as those officers may have information regarding the extent of [his] contacts with the Residence following the controlled buy." (*Id*. at 23–24.)

The district court issued an order partially adopting and partially rejecting the R&R. (*See* Memo. Opinion and Order [DC Order], Dist.Ct.Doc.

116, Addendum at A–1.) The district court agreed with the R&R that, on the face of the warrant application, there was insufficient probable cause to establish a nexus between criminal activity and the Vera Cruz townhouse, but that the search was nonetheless saved under the *Leon* good-faith doctrine. (*See id*. at 7, 9.)

But the district court rejected the R&R's recommendation to grant a *Franks* hearing on Off. Hamilton's omissions and misrepresentations. The district court found that, although driving records Off. Hamilton reviewed showed that Mr. Randle had registered a different address, the U.S. Probation records were enough to establish that the Vera Cruz townhouse was "at least one of his residences." (*Id*. at 11.) The district court found "it was not false—much less deliberately misleading or deceitful—for Officer Hamilton to characterize the address currently on file with the U.S. Probation Office as Randle's 'home.'" (*Id*.)

Because the district court ruled that Mr. Randle was not entitled to a *Franks* hearing, the district court also denied Mr. Randle's motions for discovery relating to the omitted address information and Off. Hamilton's past interactions with Mr. Randle. (*See id*. at 12.) In sum, the district court denied all of Mr. Randle's substantive pretrial motions. (*See id*. at 13.)

Following the district court's order, Mr. Randle entered into a guilty plea to one count of Possession with Intent to Distribute Controlled Substances carrying a five-year mandatory-minimum sentence. (*See* Plea Agreement, Dist.Ct.Doc. 146.) The plea was conditional under Rule 11(a)(2) of the Federal Rules of Criminal Procedure, permitting him to appeal the denial of his suppression motion, his *Franks* motion, and his discovery motion, and to withdraw his plea if his appeal should succeed. (*See id.* at 2–3.) As part of the agreement, the government agreed that it would not seek a sentence of more than 120 months' imprisonment, while Mr. Randle was free to seek the mandatory minimum of 60 months. (*See id.* at 6.)

At sentencing, Mr. Randle offered several reasons why a sentence of 60 months was appropriate. He argued that the continuing disparity in sentencing between crack and powder had no rational basis, and that the guidelines would recommend a sentence lower than the mandatory 60 months for someone with the same amount of powder. He also pointed to a troubled upbringing, where he was homeless from an early age after his parents went to prison and he had turned to selling drugs as a way to survive.

The district court acknowledged the weight of Mr. Randle's many mitigating arguments. But, pointing to Mr. Randle's criminal history and the alternative sentencing ranges he might have faced under certain counterfactual scenarios, the district court sentenced Mr. Randle to serve 108 months in prison. (*See* Judgment in a Criminal Case, Dist.Ct.Doc. 185, Addendum at A–21.)

Mr. Randle now appeals the district court's order denying his motion to suppress the search warrant evidence and his motions for *Franks* hearing and discovery. In the alternative, he also appeals his sentence, arguing that it was longer than necessary under 18 U.S.C. § 3553 and therefore substantively unreasonable.

## SUMMARY OF THE ARGUMENT

The district court erred by not granting Mr. Randle's motion to suppress the fruits of a search warrant and by failing to conduct a full *Franks* hearing regarding the affiant officer's deliberate or reckless misstatements and omissions, supported by relevant discovery the defense had requested. In the alternative, the district court erred by imposing a substantively unreasonable sentence based on improper factors.

# ARGUMENT

## I.

### THE DISTRICT COURT ERRED BY RULING THAT THE OFFICER COULD RELY IN GOOD FAITH ON A WARRANT CLEARLY LACKING PROBABLE CAUSE TO SEARCH THE VERA CRUZ TOWNHOUSE.

## A. Legal standard

When reviewing the denial of a motion to suppress, this Court reviews a district court's factual findings for clear error and its legal determinations, including application of the *Leon* good-faith exception, under a de novo standard. *See United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (citation omitted).

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures," and specifies that all warrants must be supported by probable cause established under oath. U.S. Const., amend. IV. Probable cause requires a "fair probability that contraband or evidence of a crime will be found in a particular place given the circumstances set forth in the affidavit." *United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the

specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

Evidence obtained in violation of a citizen's Fourth Amendment rights is generally subject to suppression as a deterrent to future illegal governmental conduct. *See, e.g.*, *United States v. Calandra*, 414 U.S. 338, 348 (1974). But suppression is not required when an officer violates the Fourth Amendment in objectively reasonable reliance on a warrant reviewed and approved by a neutral magistrate. *See Leon*, 468 U.S. at 922.

*Leon* identified four situations where suppression would still be necessary because an officer's reliance on a warrant would not qualify as objectively reasonable:

> (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid.

*Grant*, 490 F.3d at 632–33 (quoting *Leon*, 468 U.S at 923). At the district court, Mr. Randle relied on the third example on the face of the warrant,

arguing that Off. Hamilton could not have reasonably relied on a warrant where probable cause was so clearly lacking.[1]

Although challenges to search warrants are limited to the four corners of the warrant application, the good-faith inquiry is not so limited. *See id*. at 632. In determining whether an officer relied on a constitutionally insufficient warrant in good faith, this Court considers the totality of the circumstances, including any information known to the officer but not included in the warrant application. *See id*. This inquiry is unconcerned with the officer's subjective beliefs but instead considers "the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the [issuing judge's] authorization[.]" *Id*. (quoting *Leon*, 468 U.S. at 922 n. 23).

## B. A reasonable officer would have known the warrant failed to establish probable cause to search the Vera Cruz townhouse.

The district court agreed with the magistrate judge that the search here was not constitutionally justified because the application failed to establish probable cause to believe evidence of a crime would be found in the Vera

---

[1] As discussed below, *infra* Arg. II, Mr. Randle also invoked the first example by making a motion for *Franks* hearing.

Cruz townhouse. (*See* DC Memo, Dist.Ct.Doc. 116, at 7.) Specifically, the district court found that the affidavit had "a complete absence of any information affirmatively stating that the officers observed the controlled buy and followed Randle directly from the buy to the [Vera Cruz townhouse]." (*Id*.)

But the district court ruled that the good-faith exception saved the warrant. According to the district court, the affidavit connected Mr. Randle to drug trafficking, "allow[ing] for a reasonable inference that Randle was trafficking drugs and might be storing 'valuable contraband' in his home." (*Id*. at 9.) That language derives from *United States v. Carpenter*, 341 F.3d 666, 671 (8th Cir. 2003), which had observed that "it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence."

But there is no "per se rule . . . that probable cause to arrest a drug trafficker establishes an inference that records, paraphernalia, and other evidence of drug trafficking exists at the trafficker's residence." *Ross*, 487 F.3d at 1123. This Court "do[es] not endorse such an inference without a factual basis to form the nexus between the residence and the drugs[.]" *Carpenter*, 341 F.3d at 671 (8th Cir. 2003) (citing *Tellez*, 217 F.3d at 550). To

invoke the *Leon* rule in cases involving a deficient nexus, there must be "some modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." *Id.* at 749.

The *Leon* rule cannot excuse an unlawful search where the four corners of the warrant affidavit do not provide any evidence connecting suspected criminal activity to the place to be searched. *Id.* at 751-52. Where the district court could find "a complete absence of any information affirmatively stating that the officers observed the controlled buy and followed Randle directly from the buy to the Residence[,]" DC Memo., Dist.Ct.Doc. 116, at 7, it should have been apparent to a reasonable officer that the warrant was deficient on its face.

Notably, the magistrate judge and the district court both found the lack of probable cause in the warrant plain enough to say definitively that no nexus was established. If the matter had been too close to call, it would have been appropriate to skip directly to the question of good faith. *See*, *e.g.*, *United States v. Marion*, 238 F.3d 965, 968 (8th Cir. 2001) (citing *Leon*, 468 U.S. at 925, for the proposition that "reviewing courts may exercise informed discretion in choosing to consider whether officers acted reasonably without resolving Fourth Amendment issue[s]"). But both

courts felt comfortable deciding that there was no probable cause to search the Vera Cruz townhouse, even when granting "great deference . . . to the judicial officer's initial, on-the-scene determination that probable cause has been established." (*See* DC Memo, Dist.Ct.Doc. 116, at 5 (quoting *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010).) Under such a permissive standard of review, the unanimity and certainty in finding no probable cause emphasizes the obviousness of the error and the unreasonableness of Off. Hamilton's reliance on the warrant. *Cf. Ross*, 487 F.3d at 1123 (finding good faith in part because "not only did the issuing judge find sufficient indicia of probable cause within the affidavit to justify issuing a search warrant of Ross's residence, but so too did a United States magistrate judge and a United States district judge").

Where "affidavits simply do not say very much about [the defendant] or his residence," officers cannot reasonably rely on the issuing judge's probable cause determination. *United States v. Herron,* 215 F.3d 812, 814 (8th Cir. 2000). In *Herron,* a search warrant was issued for Mr. Herron's residence, following his alleged involvement in a relative's marijuana growing operation. While the supporting affidavits included his prior marijuana convictions and his family relationship to the marijuana

growers, "the affidavits [made] only two passing references to the Herron residence" and only three references to Mr. Herron. *Id.* at 815. In determining that suppression was warranted despite the good faith exception, the Eighth Circuit ruled that "the lack of probable cause in the affidavits would have been apparent to reasonable officers." *Id.* The clear lack of probable cause in this case was so obvious that any reasonable officer could plainly see it on the face of the warrant.

The affidavit here does not allege that Mr. Randle was in possession of any narcotics beyond what was allegedly sold to the informant. The affidavit does not say what amount of crack Mr. Randle allegedly sold or what amount of money Mr. Randle allegedly received. Even when allowed to supplement the affidavit at the motions hearing, Off. Hamilton never claimed that he saw Mr. Randle carrying anything as he entered the Vera Cruz townhouse the one time he was seen there prior to the warrant application.

And, most importantly, the district court erroneously found good faith because it would be reasonable to make assumptions about a suspected drug trafficker's home, but the record shows that Off. Hamilton did not in fact know that the Vera Cruz townhouse was Mr. Randle's home. By his

own admission, Off. Hamilton made the decision that only one of those addresses was relevant having seen Mr. Randle go there *once*, for a grand total of about 30 minutes:

> THE COURT: So your basis of determining that was the address is because he went there after a controlled buy and was there for 30 minutes?
>
> THE WITNESS: Yes, sir.

(Mtns T. 86.)

More importantly, Off. Hamilton testified that he knew that people he is investigating sometimes have multiple addresses for multiple different purposes. (*Id*. at 84.) It might be where they stored narcotics, it might be just where they slept, or it might be where their girlfriend or children lived. (*See id*.) And Off. Hamilton, by his own admission, ***didn't know*** what purpose the Vera Cruz townhouse might serve. Having only seen Mr. Randle go there once for 30 minutes, he could only speculate that "he's bringing back the proceeds back to that location, that is the location where he lives, or it could be also a location where he lives and also has narcotics." (*Id*. at 86.)

The good-faith analysis must consider evidence outside the four corners of the warrant affidavit about what the affiant officer knew, *see Grant*, 490

F.3d at 632, and here that evidence showed that Off. Hamilton did not actually know the purpose of the Vera Cruz townhouse, and that he decided the townhouse was Mr. Randle's home based on no more than 30 minutes of observation. The district court erred in crediting good faith to this crucial assertion about Mr. Randle's "home" that Off. Hamilton made without any reasonably sufficient basis.

It was unreasonable for Off. Hamilton to rely on the search warrant where the lack of probable cause for entering the Vera Cruz townhouse was so apparent, and when even on the totality of the circumstances he did not know whether it was Mr. Randle's home. The district court erred by ruling that the unlawful search could be saved by good faith, and Mr. Randle respectfully asks this Court to reverse his conviction and remand for further proceedings.

**THE DISTRICT COURT ERRED BY FAILING TO CONDUCT A *FRANKS* HEARING TO DETERMINE WHETHER THE AFFIANT OFFICER'S MISREPRESENTATIONS AND OMISSIONS WERE MATERIAL AND MADE DELIBERATELY OR RECKLESSLY.**

## A. Legal standard

Under *Franks v. Delaware*, a defendant may challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions that were "relevant to the probable cause determination." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (citing *Franks*, 438 U.S. at 155–56).

A defendant is not entitled to a *Franks* hearing as a matter of right, but instead must first clear two preliminary hurdles. First, the defendant must make a substantial preliminary showing that the affiant either knowingly and intentionally made a false statement in the warrant affidavit, or else acted with reckless disregard for the truth. False statements include omissions of material fact if "police omitted the information with the intent to make, or in reckless disregard of whether they made, the affidavit misleading." *United States v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir. 1993).

Second, the defendant must establish that the allegedly false statement was necessary to the finding of probable cause, or that the material

omission "would be clearly critical to the finding of probable cause." *Id.* at 1235. Reckless disregard for the truth may be "inferred from the fact of omission of information from an affidavit . . . when the material omitted would have been 'clearly critical' to the finding of probable cause." *United States v. Williams*, 477 F.3d 554, 559 (8th Cir. 2007). In other words, officers act with reckless disregard for the truth when they knowingly withhold information that "[a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know." *Jacobs*, 986 at 1235.

If the defendant makes this preliminary showing, the Fourth Amendment requires that a hearing be held at the defendant's request. *Franks,* 438 U.S. at 155, 171. A district court's refusal to conduct a *Franks* hearing is reviewed by this Court for abuse of discretion. *See*, *e.g.*, *United States v. Daigle*, 947 F.3d 1076, 1083 (8th Cir. 2020).

**B. The district court erred by denying Mr. Randle a *Franks* hearing and by denying his motion for discovery relevant to the *Franks* inquiry.**

Good faith here was only established due to Off. Hamilton's claim that the Vera Cruz townhouse was Mr. Randle's "home," which allowed the district court to credit a possible inference that contraband might be located there even where the affidavit otherwise failed to establish nexus to that location. (*See* DC Memo, Dist.Ct.Doc. 116, at 9 (concluding its discussion of good faith by explaining that the information in Off. Hamilton's possession "allows for a reasonable inference that Randle was trafficking drugs and might be storing 'valuable contraband' in his ***home***.") (emphasis added).) But given that Off. Hamilton was also in possession of evidence that the Vera Cruz townhouse was not, in fact, Mr. Randle's "home," and given that he failed to disclose that conflicting information to the issuing judge, the district court abused its discretion by not granting Mr. Randle's motion for a *Franks* hearing.

The word "home" has a special meaning in the Fourth Amendment realm, and that meaning could not have been lost on either Off. Hamilton or the signing magistrate. On the one hand, "when it comes to the Fourth Amendment, the home is first among equals," because "[a]t the

Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Silverman* v. *United States*, 365 U.S. 505, 511 (1961)).

But on the other hand, when one is suspected of dealing in controlled substances, the "home" very easily becomes fair game for governmental intrusion. *See*, *e.g.*, *United States v. Moya*, 690 F.3d 944, 948 (8th Cir. 2012) ("An officer and an issuing judge may infer that evidence of drug trafficking exists at the home of a person arrested in possession of drugs with intent to distribute."); *Carpenter*, 341 F.3d at 671 ("As a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence.") But for this formulation to work, the judge signing the warrant must be able to trust an officer who identifies a location as a suspect's "home."

By omitting any contrary information about where Mr. Randle resided and by specifically referring to the Vera Cruz townhouse as Mr. Randle's "home," then, Off. Hamilton was signaling that it met the standards for nexus. But it is undisputed that Off. Hamilton knew that there was

conflicting information regarding Mr. Randle's address. As discussed above, Off. Hamilton only saw Mr. Randle at the Vera Cruz townhouse once, and only for 30 minutes. (*See* Mtns T. 86.) He didn't know whether it was where Mr. Randle lived, where he stored narcotics, or what purpose the Vera Cruz townhouse might serve. (*See id*. at 84, 86.)

Off. Hamilton hid this from the issuing judge. He swore an affidavit that said definitively that the Vera Cruz townhouse was Mr. Randle's "home" and was therefore likely where he was storing contraband. It is difficult to understand how an issuing judge, signing a warrant based on Off. Hamilton's representation that the Vera Cruz townhouse was Mr. Randle's home, would not want to know that Mr. Randle had two officially-registered addresses, especially where the only basis for choosing one or the other as his home was having seen him go there once for 30 minutes.

An officer acts recklessly by withholding information that any "reasonable person would have known that this was the kind of thing the judge would wish to know." *Jacobs*, 986 F.2d at 1235. Recklessness may also be inferred when it becomes clear that the affiant "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *United States v.*

*McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011) (citation omitted). Recklessness may be "inferred from the fact of omission of information from an affidavit . . . when the material omitted **would have been** 'clearly critical' to the finding of probable cause." *Williams*, 477 F.3d at 559 (quoting *United States v. Reivich*, 793 F.2d 957, 961-62 (8th Cir. 1986)).

Here, there can be no question but that the choice to portray the Vera Cruz townhouse as Mr. Randle's "home" was clearly critical to the finding of probable cause. A defendant moving for a *Franks* hearing generally has to show that "the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented." *United States v. Smith*, 715 F.3d 1110, 1118 (8th Cir. 2013) (*quoting United States v. Cowling*, 648 F.3d 690, 695 (8th Cir. 2011). But here, as both the magistrate judge and the district court agreed, the affidavit was already deficient, failing on its face to establish a nexus to the townhouse. Where a warrant already fails to establish proper nexus, the deliberate misstatement and omission of material information related to nexus can only be material.

It was only Off. Hamilton's sworn allegation that the townhouse was Mr. Randle's home that saved this search. The good-faith absolution

accorded by the district court to the officer on the face of the affidavit was also, by extension, good-faith absolution offered to the issuing judge: you may have unambiguously erred by issuing this warrant without sufficient probable cause, but it's an understandable error where the officer told you definitively that what was to be searched was Mr. Randle's home.

Under these circumstances, it is hard to imagine how the issuing judge would not be interested to hear that Off. Hamilton didn't actually know where Mr. Randle's "home" was. Or that, among two different addresses listed in official registries, Off. Hamilton had decided that one was Mr. Randle's home after seeing him go there once for 30 minutes. Or that the Vera Cruz townhouse, as far as Off. Hamilton knew, could have served any number of different purposes.

Such information would be "clearly critical" to the issuing judge's decision to sign the warrant because any "reasonable person would have known that this was the kind of thing the judge would wish to know," *Jacobs*, 986 F.2d at 1235 ("We feel confident that if the magistrate judge had been aware of the full scope of the investigation, the application for a warrant would not have been granted."). Where the illusion of nexus was

established by misstating the truth and withholding essential information, the officer's recklessness may be inferred.

The district court abused its discretion by not holding a *Franks* hearing. Mr. Randle respectfully asks this Court to vacate his conviction and remand to the district court for further proceedings.

### C. It was procedural error to permit the government to offer evidence in support of the search warrant without conducting a full *Franks* hearing and granting Mr. Randle's discovery motion.

The Seventh Circuit has acknowledged that it is within the discretion of a district court to hold "a so-called 'pre-*Franks* hearing' to give the defendant an opportunity to supplement or elaborate on the original motion." *United States v. McMurtrey*, 704 F.3d 502, 504 (7th Cir. 2013). But, examining the "sparse case law" on such hearings, the Seventh Circuit observed that "this procedural improvisation is not without risk," because "the natural temptation for the court will be to invite and consider a response from the government." *Id*. And "the court should not give the government an opportunity to present its evidence on the validity of the warrant," warned *McMurtrey*, "without converting the hearing into a full evidentiary *Franks* hearing, including full cross-examination of government witnesses." *Id*.

When Mr. Randle filed his *Franks* motion, the government implicitly acknowledged that there were false statements in the warrant affidavit by filing Off. Hamilton's declaration, accompanied by a police report related to an alleged controlled buy. The government then brought Off. Hamilton in for testimony at the motions hearing, where he was questioned regarding the statements in his affidavit.

But this was not, nor was it intended to be, a full *Franks* hearing. Both parties anticipated making arguments regarding the need for a hearing. Mr. Randle had requested discovery, asking that it be turned over before the motions hearing, but it was only after the hearing that the R&R recommended ordering the government to turn over reports related to the address investigation, in anticipation of the *Franks* hearing. So although here, unlike in *McMurtrey*, Mr. Randle was permitted to cross-examine the officer, he was nonetheless denied his full opportunity to respond to the government.

If Mr. Randle had received a full *Franks* hearing, that would have resolved any prejudice from the initial proceeding. *See McMurtrey*, 704 F.3d at 509 n.3. *McMurtrey* rejected the government's on a prior case where the government had submitted an affidavit to buttress a search warrant

affidavit, because in that case a full *Franks* hearing was later held, making the matter moot. *See id*. (discussing *United States v. Spears*, 673 F.3d 598 (7th Cir. 2012)). *McMurtrey* emphasized that the government should not be permitted to buttress its case prior to a *Franks* hearing: "Our description of the procedures used in *Spears* should not be construed as having approved the use of the government's new affidavit to deny the original motion for a *Franks* hearing." *Id*.

Here, the district court relied on the government's proffered evidence to deny the *Franks* hearing. Doing so was procedural error, and that error was not harmless. Indeed, the procedural error here was especially significant given the admitted flaws in the warrant affidavit. Even in denying Mr. Randle's motions, the district court agreed that the affidavit clearly failed to establish probable cause to search the Vera Cruz townhouse. And good faith in that warrant was dependent on the reasonableness of Off. Hamilton portraying the townhouse as Mr. Randle's "home," or whether that was a deliberate or reckless misstatement of material fact in light of conflicting information knowingly withheld from the issuing judge. The magistrate judge, who heard the evidence, determined that further inquiry

was necessary and so ordered a *Franks* hearing with further evidence to be disclosed by the government.

Mr. Randle had also asked for a *Franks* hearing to challenge Off. Hamilton's claim, supported by a vague police report with neither names or narrative, that he had conducted a controlled buy with Mr. Randle in October 2018, which was how he bolstered his assertion of multiple controlled buys in the warrant affidavit. (*See* Declaration of Efrem Hamilton, Dist.Ct.Doc. 28-2, at 1–2; Minneapolis Police Dept. Report, Dist.Ct.Doc. 28-3.) The government bolstered the affidavit without Mr. Randle having the full opportunity to challenge the truth or falsity of Off. Hamilton's allegations. This was procedurally improper, and procedurally unfair.

Denying Mr. Randle the full *Franks* hearing left a prejudicial process in place, one that permitted the government an opportunity to buttress the warrant without giving Mr. Randle a full opportunity to respond. Doing so was error, especially given the acknowledged deficiencies in the warrant, and Mr. Randle respectfully asks the Court to reverse his conviction and remand for further proceedings.

# III.

**THE DISTRICT COURT ERRED BY IMPOSING A SENTENCE THAT WAS SUBSTANTIVELY UNREASONABLE IN LIGHT OF THE COMPELLING MITIGATING ARGUMENTS.**

## A. Legal standard

This Court reviews imposition of sentence under a "deferential abuse-of-discretion standard." *See United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (citations omitted). A district court abuses its discretion if it "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." *United States v. Peterson*, 848 F.3d 1153, 1157 (8th Cir. 2017) (citations omitted and cleaned up).

In reviewing the overall reasonableness of a sentence, this Court must examine the totality of the relevant circumstances. *See Feemster*, 572 F.3d at 461. Review is deferential, but errors do occur, and this Court must therefore remain watchful: "In sentencing . . . district court judges at times make mistakes that are substantive. At times, they will impose sentences that are unreasonable. Circuit courts exist to correct such mistakes when they occur." *Rita v. United States*, 551 U.S. 338, 354 (2007).

**B.** **The sentence imposed here was substantively unreasonable, resulting in a sentence that was greater than necessary.**

The "overarching provision" of the sentencing statute, 18 U.S.C. § 3553, is the parsimony provision, directing sentencing courts to impose sentences "sufficient, but not greater than necessary" to comply with the purposes set forth in § 3553(a)(2). *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007). A proper sentence must take into account the circumstances of the defendant and his offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, while taking into account the types of sentences available and the need to avoid unwarranted disparities and provide restitution to victims. *See* 18 U.S.C. § 3553(a).

Although the Sentencing Guidelines are "the starting point and the initial benchmark . . . [t]he Guidelines are not the only consideration":

> [A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. . . . After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Gall v. United States*, 552 U.S. 38, 50 (2007).

At sentencing, Mr. Randle raised several compelling arguments in mitigation. First, he argued that the sentencing disparity between crack and powder cocaine reflected in his guideline calculations was unjustifiable and discriminatory. Mr. Randle was found to have possessed 309 grams of crack cocaine, which led to a base offense level of 30. That amount of powder cocaine would have resulted in a base offense level of 20, but because it was crack instead, Mr. Randle saw his advisory sentencing range increased from 51–63 months to 100–125 months.

There is simply no rational basis for this disparity. Although that disparity has been reduced, the fears that led to the disparity have all been disproved. (*See* Def. Sent. Memo., Dist.Ct.Doc. 169, at 3–6.) But the damage caused by that disparity is real, and that damage has fallen most heavily on the Black population that disproportionately uses and distributes the crack form of cocaine. (*See id*. at 7–8.) "If anything, the evidence suggests powder cocaine should be targeted more severely than crack." *United States v. Spears*, 469 F.3d 1166, 1187 (8th Cir. 2006) (en banc) (Bye, J., concurring in part and dissenting in part), *rev'd*, 555 U.S. 261 (2009) (per curiam). Instead,

Mr. Randle saw his advisory sentencing range more than double, from below the mandatory minimum 60 months to well above it.

But that was not all, because Mr. Randle's upbringing also presented the district court with compelling mitigating facts. Mr. Randle grew up without a stable home, with his parents incarcerated. He was often homeless, and he got involved with drug sales because it was the most readily available means of getting the money necessary for food and a place to stay. He struggled with mental health issues, including depression, anxiety, and ADHD, and he turned to drug and alcohol use as a coping mechanism.

Mr. Randle spoke eloquently on his own behalf. (*See* Sent.T. 23–30.) He fully admitted that he had done wrong by selling drugs. (*See id*. at 24–25, 27.) He told the district court about his difficult upbringing, and his sincere desire to work hard on self-improvement and self-mastery. (*See id*. at 24.) He talked about the three children who depended on him, who he let down, and who he was determined to see in a better life than the one he had experienced. (*See id*. at 25.)

The district court acknowledged the sincerity of Mr. Randle's statements. (*See id*. at 30.) But in the end, the district court sentenced Mr.

Randle to 108 months, below the advisory guideline range but well above the requested 60 months. (*See id*. at 37; *see also* Judgment, Addendum at A–1.) The district court pointed to Mr. Randle's long criminal history and the fact that, if certain things about his case were different—if, for instance, he had been a career offender under § 4B1.1 of the guidelines, which he wasn't—he would be facing a much higher guideline range. (*See id*. at 33.)

As the Supreme Court emphasized in *Rita*, district courts are permitted a great deal of latitude in crafting sentences, but that latitude is not limitless. 551 U.S. at 354.

A district court abuses its discretion where it "fails to consider a relevant factor that should have received significant weight" or "gives significant weight to an improper or irrelevant factor[.]" *Peterson*, 848 F.3d at 1157. Here, the district court acknowledged the weight of Mr. Randle's mitigating factors, including the continuing disparity between crack and powder cocaine and the hardships he endured in his life, but chose to sentence him to 108 months in prison. That sentencing decision was an abuse of discretion because it was explicitly based on factors already taken into account in calculating Mr. Randle sentencing range, like his criminal history, and on factors that were explicitly counter-factual, like what Mr.

Randle's sentencing range would have been if he had been charged

differently or if he had qualified for career offender sentencing.

The sentence here constituted an abuse of discretion because it was

based on "improper or irrelevant" factors. Mr. Randle respectfully asks this

Court to vacate his sentence and remand to the district court for

resentencing.

## CONCLUSION

No reasonable officer could have relied in good faith on the search warrant here, given its plain lack of nexus to the Vera Cruz townhouse, and the district court erred by denying Mr. Randle's motion to suppress the fruits of that unlawful search. The district court further erred by not granting Mr. Randle a full *Franks* hearing, with his requested discovery. Mr. Randle respectfully asks that his conviction be reversed and the matter remanded to the district court. In the alternative, because the sentence imposed was excessive and substantively unreasonable, Mr. Randle asks this Court to vacate his sentence and remand for resentencing.

Dated: September 13, 2021

/s/ *Thomas H. Shiah*
Minnesota Attorney #100365
331 Second Avenue South
Suite 705
Minneapolis, MN 55415
Phone: (612) 338-0066

/s/ *Steven J. Wright*
Minnesota Attorney #387336
331 Second Avenue South
Suite 705
Minneapolis, MN 55415
Phone: (612) 669-8280

Attorneys for Appellant

United States of America,

                Appellant,

v.

Johntez Leondis Randle,

                Appellee.

Appeal No. 21-2275

**Certificate of Compliance
with Fed.R.App.P. 32(a)
and 8th Cir. R. 28A(h)**

---

I hereby certify that the Brief of Appellant contains 7,517 words,
excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii),
as counted by Microsoft Word, the word processing system used to
generate the brief. This brief complies with the type-volume limitation of
Fed.R.App.P. 32(a)(7)(B), the typeface requirements of Fed. R. App. P.
32(a)(5), and the type style requirements of Fed. R. App. P. 32(a)(6).

I further certify that the electronic version of the brief and addendum
have been scanned for viruses and are virus-free to the best of my
knowledge.

    Date: <u>September 13, 2021</u>

                    */s/ Steven J. Wright*
                    Attorney for Appellant

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

| | |
|---|---|
| United States of America, | Appeal No. 21-2275 |
| Appellee, | **Certificate of**<br>**Electronic Service** |
| v. | |
| Johntez Leondis Randle, | |
| Appellant. | |

    I hereby certify that on September 13, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Date: <u>September 13, 2021</u>          <u>*/s/ Steven J. Wright*</u>
                                       Attorney for Appellant